IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RONALD A. SEIVER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No.  13-cv-928-CJP**[1] |
| | ) | |
| **J. S. WALTON,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

Ronald A. Seiver filed a petition for writ of habeas corpus under 28 U.S.C. §2241 challenging the loss of 26 days of good conduct credit imposed as a sanction pursuant to a prison disciplinary proceeding.  (Doc. 1).

### Relevant Facts and Procedural History

Petitioner is serving an aggregate 420 month sentence for one count of possession of child pornography and one count of sexual exploitation of a child. His projected release date via good conduct credit is March 14, 2041.  See, Doc. 12, Ex. 3.[2]

On July 3, 2012, a correctional officer at USP Marion wrote an incident report charging petitioner with three violations: Telephone Abuse, Unauthorized Contact with the Public, and Mail Abuse.  The charges arose out of petitioner's telephone conversations with J.L., a minor female, and a letter which petitioner

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).  See, Doc. 17.

[2] The Court uses the document, exhibit and page numbers that are assigned by the CM/ECF system.

wrote to his mother.

The reporting officer reviewed telephone records and learned that Seiver began contacting J.L. in December, 2011, when he was at another institution. The report identified J.L. as a victim in petitioner's case.  He placed 37 calls to her.  The report describes some of the disturbing details of those conversations. In December, 2011, Seiver told J.L. that, when he got to West Virginia, he would be able to email her.  J.L. said that he could not do that "because her mom checks her email now."  Seiver responded that "we will just make up a new one." In a later conversation, J. L. stated that "they asked me if I have had any contact with you [and] I told them no."  Seiver told her that she "needs to go to Victoria's Secret and the next time she is with her friends they could have a pillow fight and they should wear thongs."  In a conversation on June 6, 2012, J.L. stated that she would be able to legally drive on the 14th, suggesting that she was about turn 16. Seiver asked her how much sex she had been having and stated that he wished he were there so that he could give her a massage and that he loved and missed her. See, Incident Report, Doc. 12, Ex. 9.

The mail charge arose out of letter that Seiver wrote to his mother, dated June 12, 2012.  Petitioner informed his mother that he had been placed in the SHU (Special Housing Unit).  He asked his mother to have his sister April log onto his MSN Messenger account and contact the person listed under his "favorites" with an email address that ends in "yy."  April was to ask "her if anything bad has happened.  If yes and it concerns me somehow (no idea why it would, just being

safe), then say I'm sorry and log off MSN and forget it. If no then say this: Sorry I haven't called. They put me I the SHU again…. No idea when I can call again…. Love you and miss you like crazy." See, Letter dated June 12, 2012, Doc. 12, Ex. 7, pp. 24-25.

A hearing was held on July 24 2012. The Discipline Hearing Officer (DHO) found petitioner guilty of Phone Abuse and Mail Abuse. In his report, the DHO noted that "Your Judgment and Commitment Order says you should have no contact with anyone under the age of 18 unless approval granted by U.S. Probation. There would be an expectation you would follow this directive while in Bureau of Prisons' custody." He also stated that the weight of the evidence established that petitioner "did use the mail in an attempt to have a family member contact a victim in your court case and you had phone conversations with the victim." See, DHO Report, Doc. 12, Ex. 10, p. 2.

## Grounds for Habeas Relief

In the petition, Seiver stated that his due process right were violated because the "the evidence was not sufficient enough [sic] to find guilt, and the hearing officer used Petitioner's supervised release conditions to support the findings of guilt." Doc. 1, p.1, ¶3. However, in his reply, he denies that he is challenging the sufficiency of the evidence. Rather, he states that his only ground is that "his due process rights were violated because the DHO relied on his supervised release conditions listed in his Judgment and Commitment Order." Doc. 14, p. 2, ¶2.

Respondent argues first that the petition must be dismissed because petitioner did not exhaust administrative remedies, and further, that petitioner is not entitled to habeas relief for substantive reasons.

### Applicable Legal Standards

**1.     The Exhaustion Requirement**

Inmates in the custody of the Bureau of Prisons can challenge the loss of good conduct credit by way of a petition for habeas relief pursuant to 28 U.S.C. §2241. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). However, before the Court can consider such a claim, petitioner must exhaust administrative remedies. *Jackson*, 707 F.2d at 949; *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997).

The exhaustion requirement in §2241 cases is not statutorily mandated, and is therefore not jurisdictional. The Seventh Circuit has recognized that there can be exceptions to the requirement, but "sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). The Supreme Court has identified two purposes for the exhaustion requirement, i.e., protection of the agency's authority, and promotion of judicial economy. *Id.*, at 1017.

The Bureau of Prisons has created an Administrative Remedy Program which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. §542.10(a). The Program "applies to all inmates in institutions operated by the Bureau of Prisons. . . ." §542.10(b).

The Administrative Remedy Program is described in detail in Doc. 12, Exs.

1, 4 and 5.

**2.     Due Process Requirements in Prison Disciplinary Proceedings**

Inmates retain due process rights in connection with prison disciplinary proceedings, but such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 94 S.Ct. 2963, 2975 (1974).  The minimum requirements of due process in such proceedings are (1) receipt of written notice of the charges in advance of the hearing, (2) an opportunity to be heard before an impartial decision maker, (3) the right to call witnesses and present evidence where same will not be unduly hazardous to safety or correctional goals, and (4) a written statement as to the evidence relied on and the reason for the decision.  *Wolff*, 94 S.Ct. at 2978-2980; *Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994).

The findings of the disciplinary hearing officer must be supported by "some evidence in the record."  *Superintendent v. Hill*, 105 S.Ct. 2768, 2773 (1985). This Court can overturn the decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented."  *Id.*

Under the "some evidence" standard, this Court does not reweigh the evidence or determine credibility.  *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).  The evidence need not be sufficient to logically exclude any result except the one reached by the prison decision maker.  *Viens v. Daniels*, 871 F. 2d 1328,

1334-1335 (7th Cir. 1989).   Further, only evidence that was presented to the hearing officer is relevant to the determination of whether there was "some evidence." *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).

### Analysis

Respondent's argument on exhaustion consists of one sentence: "Because Petitioner never appealed the DHO hearing to the regional (BP-10) and central office (BP-11), he has not exhausted his administrative remedies, and his petition must be dismissed."  Doc. 12, p. 8.

The record is murky as to exhaustion of administrative remedies. Petitioner filed a request for administrative remedy which was designated Remedy ID 704518-R1.  In Remedy ID 704518-R1, Seiver complained that he had not yet received a copy of the DHO's report.  The remedy was denied because the DHO report indicated that he had received a copy on August 2, 2012.  See, Doc. 12, Ex. 7, pp. 3-4.

In his reply, Seiver explains that he procured an email from a DHO secretary in late November, 2012, confirming that he had not received a copy of the DHO report.  He then filed an appeal to the Central Office.  He states that he also filed a BP-10 to the Regional Office that was "misconstrued" as a duplicate of the previously-filed administrative remedy request which concerned not receiving a copy of the DHO report.  Unfortunately, neither party has furnished the Court with any documentation as to the actual content of the second BP-10.

The documentation attached to the reply indicates that petitioner filed an

appeal regarding "DHO Appeal" in January, 2013.  This was designated  Remedy ID 704518-A2 and was accepted.  Doc. 14, p. 5.  Again, the Court has not been furnished with the contents of that BP-10.  On January 29, 2013, the BOP notified petitioner that it required additional time in which to respond to this appeal.  The Central Office's response date was extended to March 23, 2013.  Doc. 14, p. 9.  Petitioner states that, as of November 20, 2013, he had not received a response.  Per BOP policy, when an inmate does not receive a timely response, he may consider the absence of a response to be a denial.  Doc. 14, p. 10.

It appears, then, that Seiver filed and exhausted two separate administrative remedy requests concerning the disciplinary hearing at issue.  One concerned not receiving a timely copy of the DHO report.  However, there is no indication of the subject matter of the second remedy request.

There is uncertainty here as to whether Seiver exhausted the issue at the administrative level that he raises here – uncertainty that could presumably have been dispelled by respondent.  Failure to exhaust is an affirmative defense on which respondent has the burden of proof.  *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).  Respondent has not established that petitioner failed to exhaust his administrative remedies.  The Court therefore turns to the substantive issue raised by petitioner.

Petitioner does not allege that he was deprived of any of the *Wolff* requirements.  Notably, he does not deny that he placed 37 calls to J.L., a minor, in the relevant period of time.  And, he does not claim that the incident report

inaccurately described the conversations.

Rather, he argues that his due process rights were violated because the DHO stated that he was expected to abide by the conditions of his supervised release while in prison. This argument rests on a hypertechnical reading of the DHO report. Contrary to Seiver's argument, the DHO did not find him guilty solely because he violated the terms of his supervised release.

The DHO did note that "there would be an expectation" that petitioner would follow the directive in his Judgment and Commitment Order that he not have unapproved contact with a minor while in the BOP. However, he found petitioner guilty because he had telephone conversations with a victim in his court case. See, Doc. 12, Ex. 10, p. 2. Petitioner disputes that J.L. was a victim, but he admits that he "received relevant conduct enhancement for allegedly communicating with J.L." Doc. 14, p. 3. Seiver's relevant conduct with J.L. is described in his presentence investigation report. That part of the presentence investigation report is attached to the DHO report and states, in part, "At the direction of the defendant, the minor [J.L.] took nude photographs of herself with her phone camera and emailed the images to the defendant." See, Doc. 12, Ex. 7, ¶11. Seiver's argument that the DHO was wrong to view J.L. as a victim is completely off-base. Petitioner's due process rights were not violated in connection with the phone abuse charge.

Despite his statement to the contrary, Seiver's argument as to the mail abuse charge is, in fact, an attack on the sufficiency of the evidence. He argues

that there is no proof that J.L.'s email ends in "yy."

In evaluating whether there is adequate evidence to support the findings of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 105 S. Ct. 2768, 2774, (1985). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent,* 105 S. Ct. at 2775.

The DHO correctly noted that the presentence investigation report indicated that Seiver had communicated with J.L. through MSN Messenger.   That fact, along with the timing of the letter, the content of the message that petitioner wanted his sister to communicate, and the content of petitioner's conversations with J.L., provide "some evidence" to support a finding that the intended recipient of the MSN Messenger communication was J.L.

In sum, petitioner has not demonstrated that he is entitled to habeas relief. He does not contest the sufficiency of the evidence of the phone abuse charge.  His due process rights were surely not violated by punishing him for having sexually-charged conversations with a minor while in the custody of the BOP on convictions for child pornography and sexual exploitation of a child, particularly where his prior contact with that minor constituted relevant conduct for sentencing.  The evidence on the mail abuse charge was sufficient to support the finding of guilty.

## Conclusion

Ronald A. Seiver's Petition for Writ of Habeas Corpus Under 28 U.S.C. §2241 **(Doc. 1)** is **DENIED**.

The Clerk of Court shall enter judgment in favor of respondent.

**IT IS SO ORDERED.**

**DATE:  August 19, 2015.**


<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**

## **Notice**

If petitioner wishes to appeal the denial of his petition, he may file a notice of appeal with this court within sixty days of the entry of judgment.  Fed. R. App. P. 4(a)(1)(B).  A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal.  See Fed. R. App. P. 24(a)(1)(C).

Petitioner is further advised that a motion to alter or amend the judgment filed pursuant to Federal Rule of Civil Procedure 59(e) must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended.  A proper and timely Rule 59(e) motion may toll the 60-day appeal deadline.  Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.

It is not necessary for petitioner to obtain a certificate of appealability from this disposition of his §2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).